Argued October 29, affirmed December 18, 1968, petition for
rehearing denied January 14, 1969

## STATE OF OREGON, *Respondent, v.*
## MONTE GIBSON, *Appellant.*

448 P. 2d 534

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed a brief for appellant.

*John M. Eaton,* District Attorney, Burns, filed a brief for respondent.

Before McAllister, Presiding Justice, and Sloan, O'Connell, Goodwin, Denecke, Holman and Mengler, Justices.

## GOODWIN, J.

Defendant was convicted of robbery by force and violence, not being armed with a dangerous weapon, and appeals.

The facts material to the appeal are these:

Monte Gibson and Larry Wright were drinking in a Burns establishment called the Central Pastime. When a third man, Juan Landa, left the tavern, Gibson and Wright followed him outside and attacked him. Both were charged with beating, kicking, and robbing Landa. Landa's wounds required eleven days of hospital care. Gibson admitted participating in the beating, but denied taking Landa's money. Wright denied either beating or robbing Landa. Each defendant swore that the other took Landa's billfold and money. The victim swore that Wright took his money while Gibson had him down and was kicking him. The empty billfold was found near the scene of the beating. Wright was convicted of the crime in a jury trial a week before Gibson's trial.

The first question is whether the trial court erred in the manner in which it gave the statutory instruction on the testimony of an accomplice.[1]

■ Since a part of the state's evidence against Gibson had been supplied by the testimony of Wright, the court was required to instruct that the testimony of an accomplice was to be viewed with distrust. After giving the instruction in the words of the statute, the court then added, "and as a matter of law, I instruct

---

[1] ORS 17.250 "The jury * * * [is] to be instructed by the court on all proper occasions:

"(4) That the testimony of an accomplice ought to be viewed with distrust, and the oral admissions of a party with caution.

"* * * * *"

you in this case that Larry Wright is an accomplice of the defendant Monte Gibson."

The defendant interprets the addendum to the instruction as an instruction to the jury that if they believed that Wright was guilty of the robbery then they must also find the defendant guilty. The jury knew that Wright had been tried for the same crime, as the matter had been brought out in his examination.

Gibson concedes for the purpose of argument that he was guilty of the crime of assault and battery, and that he and Wright were accomplices in the commission of the lesser offense. He insists that it was prejudicial to suggest that he and Wright were accomplices in the commission of the robbery.

■ The question, therefore, is whether the court's telling the jury that the two defendants were accomplices as a matter of law amounted to a directed verdict for the state on the issue of guilt. Such an explicit instruction would be erroneous in a criminal trial, no matter how overwhelming the evidence of guilt might be. See *State v. Daley,* 54 Or 514, 103 P 502, 104 P 1 (1909).

■ We do not believe that the instruction given, when considered in the context in which it was given, amounted to a directed verdict for the state. The court was explaining to the jury that the testimony of an accomplice is to be viewed with distrust. Apparently in the belief that it would be favorable to the defendant to point out the obvious, the court then removed any doubt about the applicability of the instruction by telling the jury that Larry Wright was an accomplice.

While Wright had denied either beating or robbing the victim, the victim had testified that Wright had

struck the first blow and had taken his wallet. Since the jury knew that Wright had been tried for the crime, the jury knew that a crime in fact had been committed, and that Wright was at least an accomplice. It does not follow, however, that in the trial of this particular case the defendant Gibson was prejudiced by the instruction. We hold that the instruction, as given, was erroneous, but that the error was harmless. See *State v. Dugger*, 161 Or 355, 364, 88 P2d 990 (1939).

■■ Another assignment challenges an instruction which told the jury that one codefendant would be legally responsible for "any other crime committed in pursuance of the intended crime and which, under the circumstances, is a natural and probable consequence of the intended crime." The vice in this somewhat opaque instruction is alleged to lie in its tendency to suggest to the jury that robbery is a natural consequence of assault and battery. The challenged instruction was virtually meaningless, and we do not believe that it was prejudicial to the defendant in this case. The evidence as a whole left little doubt that two predators had followed a chosen victim out of a tavern and had beaten him almost to death. Whether by preconceived design or not, one of them had absconded with the contents of the victim's wallet. If the two defendants were in fact acting in concert, it would make no difference which one actually took the money. ORS 161.220.⊚ A reasonable interpretation of the in-

---

⊚ ORS 161.220 "The distinction in felonies between an accessory before the fact and a principal, and between principals in the first and second degree, is abrogated. All persons concerned in the commission of a felony or misdemeanor, whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, are principals and shall be indicted, tried, and punished as principals."

struction is that if the jury thought that the particular robbery that occurred was a natural result of the enterprise in which the two men were engaged, both would be equally guilty no matter which one may have taken the money. When so understood, the instruction was a correct statement of law. See 1 Wharton, Criminal Law and Procedure § 114, at 247 (Anderson ed 1957).

While we agree with the defendant's proposition that robbery is not a natural and probable result of every assault and battery, the instruction did not tell the jury that it was. Accordingly, the instruction, whatever its other faults may have been, was not so misleading as to constitute reversible error.

■ A final assignment of error asserts that the motion for a directed verdict of acquittal should have been allowed. The motion was based upon the defendant's theory that the episode must be treated as two separate and unrelated crimes: (1) an assault and battery in which the defendant Gibson admitted his participation, and (2) a robbery in which there was no evidence of Gibson's participation other than Wright's uncorroborated testimony that it was Gibson who took the money. This argument ignores a substantial volume of evidence that the whole affair was a single transaction, with both defendants participating in the despoliation of the victim.

Assuming that there was error in the instructions given, the error could not have resulted in prejudice. Pursuant to ORS 138.230 and Oregon Constitution, Art VII, § 3 (Amended), the judgment is one that must be affirmed despite the errors.

Affirmed.