Jaycee BYRD, Appellant,

v.

**UNITED STATES, Appellee.**

No. 03–CF–534.

District of Columbia Court of Appeals.

Argued Feb. 23, 2005.
Decided March 10, 2005.

Winsome G. Gayle, Public Defender Service, with whom James Klein and Jaclyn Frankfurt, Public Defender Service, were on the brief, for appellant.

Thomas S. Rees, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Barbara J. Valliere, and Blanche L. Bruce, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

A jury convicted appellant of felony murder, attempted armed robbery, and related weapons offenses. The convictions stemmed from the shooting death of Wesley Whiteing on September 28, 2001. The government's theory, accepted by the jury, was that appellant either shot Whiteing himself or aided and abetted the shooting by William Mason during an attempt to rob the victim of a fashionable leather jacket. Mason pled guilty to manslaughter while armed for the shooting and testified against appellant at trial.

On appeal, the only point in dispute is whether the trial judge committed reversible error in denying appellant's request to modify the standard Redbook instruction [1] concerning testimony by an accomplice, in this case Mason.[2] That instruction, which the judge gave to the jury verbatim in specific "reference to the testimony of William Mason," states as follows:

Accomplices in the commission of a crime are competent witnesses and the government has a right to use them as witnesses. An accomplice is anyone who knowingly and voluntarily cooperates with, aids, assists, advises, or encourages another person in the commission of a crime, regardless of his/her degree of participation.

The testimony of an alleged accomplice should be received with caution and scrutinized with care. You should give it such weight as in your judgment it is fairly entitled to receive. If the testimony of an alleged accomplice is not supported by other evidence, you may convict a defendant upon that testimony

---

1. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (4th ed. 2002) (Redbook Instructions).

2. The government concedes appellant's additional contention that his conviction for at-

tempted armed robbery merges with his conviction for felony murder, and that one of his convictions for possession of a firearm during a crime of violence similarly merges with the other.

only if you believe that it proves the guilt of the defendant beyond a reasonable doubt.

Redbook Instruction No. 2.22. Appellant had requested this instruction in regard to Mason's testimony, but asked that it be modified in two respects. First, he urged deletion of the word "accomplice" and substitution of the word "participant" (*e.g.,* "participants in the commission of a crime are competent witnesses [etc.]"). Second, although not as clearly, he urged deletion of the second sentence defining an accomplice in terms that roughly parallel the aiding and abetting instruction the judge proposed to give at the government's request. Use of the word "accomplice" together with the second sentence, appellant argued, was tantamount to "tell[ing] the jury that ... Mr. Mason is a person who was encouraging or assisting or advising or aiding ... the defendant here," when appellant's defense, to the contrary, had been innocent presence. The trial judge, although willing to add the modifier "alleged" before each use of the word "accomplice," otherwise declined to change the standard instruction.

Appellant argues on appeal that this prejudiced him because "(1) the term 'accomplice' suggested that Mr. Mason was assisting another person, when the only other person would be Mr. Byrd, and (2) the definition of accomplice stated in the instruction paralleled the aiding and abetting instruction, thereby validating the government's theory of the case" (Br. for App. at 13). Although we agree with appellant's point below that the Redbook accomplice instruction is not "written in stone," Judge Bowers did not abuse his discretion in adhering to the standard formulation. *See generally Banks v. District of Columbia,* 551 A.2d 1304, 1310 (D.C. 1988) (confirming trial court's "broad discretion in fashioning appropriate jury instructions").

■ First, as formulated in the Redbook, the accomplice instruction has been a staple for many years in this jurisdiction. Over thirty years ago Judge Leventhal, speaking for his court, pointed to it as "[a] conventional and approved form" of the admonition juries must receive to scrutinize uncorroborated testimony of government witnesses who admit complicity in the crime and so may "have 'reason to expect that their sentence[s] might depend upon their testimony.'" *United States v. Lee,* 165 U.S.App. D.C. 50, 57, 58 n. 24, 506 F.2d 111, 118, 119 n. 24 (1974) (citation omitted). As an exception to the general rule disfavoring "instructions regarding the weight and credibility of the testimony of specific witnesses or classes of witnesses," *Coleman v. United States,* 379 A.2d 951, 955 (D.C.1977), the instruction benefits the defendant by admonishing the jury to view cautiously the testimony of an alleged accomplice no matter how small his role—"regardless of his/her degree of participation"—in the charged crime. Given the pedigree and purpose of the instruction, the argument that a judge risks prejudicing the defendant by delivering it in standard Redbook terms invites skepticism at the outset.

■ Moreover, appellant does not explain adequately why the instruction "validated" or "endorsed the government's position that this was a case involving criminal associates" (Reply Br. for App. at 1, 5). The judge did not say or suggest that Mason was in fact an accomplice in the crime, but instead twice referred to him as an "alleged accomplice," a plain reference to the *government's* theory that appellant and Mason had jointly set out to rob Whiteing. Indeed, had the judge accepted appellant's proposal to substitute the word "participant" for "accomplice" in "the commission of a crime,"

the jury would have been reminded just the same of the government's position that, at a minimum, appellant had aided Mason in committing the crime. Similarly, while the description of an accomplice as one who "aids, assists, advises or encourages another person in the commission of a crime" certainly echoed the government's joint liability theory, it did not endorse it—rather, as we have seen, in context it gave the jury the very different message to scrutinize carefully the testimony of one who had implicated appellant in the crime along with himself.

Decisions of other courts cited by appellant do point to the risk that an instruction depicting a witness as an "accomplice" may lend the judge's "imprimatur" (Br. for App. at 14) to the government's theory of joint liability. But in those cases particularly emphatic language in the instruction used supported an impression—to lay jurors—that the court itself saw the facts as portraying either joint participation or nothing. *See, e.g., Anthony v. State,* 521 P.2d 486, 492 (Alaska 1974) ("You are instructed that the witness Verna Louise Hofhines is an accomplice."); *State v. Gibson,* 252 Or. 241, 448 P.2d 534, 536 (1968) ("[A]s a matter of law, I instruct you in this case that Larry Wright is an accomplice of the defendant Monte Gibson."); *State v. Begyn,* 34 N.J. 35, 167 A.2d 161, 170 (1961) (accomplice witnesses were "as much guilty of [the offenses] as the defendant under their own testimony"; an accomplice is one "who has committed the crime with the person charged"). The Redbook instruction avoids these rhetorical excesses,[3] and does not yield the conclusion reached by the court in *Anthony* that "the risk that the jury would infer from [an] accomplice-as-a-matter of law in-

struction that the defendant was to be presumed guilty outweighs the risk that the jury would not properly discredit accomplice testimony." 521 P.2d at 494.

We therefore find no abuse of discretion in Judge Bowers' choice of instruction. That is not to say, however, that judges in this jurisdiction are limited to using Redbook Instruction No. 2.22, or that drafters of the next edition of the pattern instructions may not find some revision of the instruction advisable. In an array of model instructions cited by appellant, drafters have found ready substitutes for words such as "accomplice" or "immunity," partly in a general effort to avoid legalese, *see* FEDERAL JUDICIAL CENTER, *Pattern Criminal Jury Instructions,* Part I(C)(24), Commentary (1987) ("It was considered preferable to avoid the use of these legal terms."), but also perhaps recognizing that the term "accomplice" may have a "rather opprobrious connotation against a defendant." *Begyn,* 167 A.2d at 171. Indeed, in *Price v. United States,* 531 A.2d 984 (D.C. 1987), Judge (later Chief Judge) Hamilton "declined to use the term 'accomplice' and instead instructed the jury as to the caution and scrutiny to be given the testimony of 'a witness who admitted his own participation in the offenses charged against the defendants in the case.'" *Id.* at 986 n. 2. Our holding in *Price* addressed the different question of whether an "immunized witness" instruction is necessary when the jury has been given an accomplice instruction, but we expressed no disapproval of the modification the judge had made to the accomplice instruction.

For the reasons stated, and except for the remand necessary to effect the merger

---

**3.** *See also State v. Oatney,* 335 Or. 276, 66 P.3d 475, 483 (2003) (distinguishing and limiting the holding of *Gibson, supra*).

of counts, see note 2, *supra*, the judgment of the Superior Court is

*Affirmed.*